**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

DON BOZEMAN,

        PLAINTIFF,

v.                             CASE NO.:

TCI CONTRACTING LLC. D/B/A
777 IBP OF PENSACOLA/ACE,

        DEFENDANT.

_____/

## COMPLAINT

Plaintiff, Don Bozeman, (hereinafter referred to as the "Plaintiff" or "Bozeman"), by and through his undersigned attorney, sues the Defendant, TCI Contracting, LLC. d/b/a 777 IBP of Pensacola/ACE, (hereinafter referred to as the "Defendant" or "IBP"), and alleges as follows:

### INTRODUCTION

1.    Plaintiff brings this action for disability discrimination, retaliation and hostile work environment under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008; 29 USCS §§ 2611 et seq; and interference under the and the Family Medical Leave Act ("FMLA").

### JURISDICTION AND VENUE

2.    The jurisdiction of the Court over this controversy is invoked pursuant

1

to 29 U.S.C. § 2617(a)(2); 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

3.      Defendant is considered an employer within the terms and conditions of the FMLA. Defendant employs fifty (50) or more employees within 75 miles of the worksite of Plaintiff.

4.      Plaintiff worked for Defendant from December 17, 2017, until his unlawful termination on July 21, 2020. Plaintiff is considered an "eligible employee" for purposes of the FMLA as he has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5.      The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

6.      Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

7.      Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

8.      This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

9.      Plaintiff   has   complied   with   all   conditions   precedent   and

administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) and the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes. On August 6, 2020, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202126498) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202001165). On February 1, 2021, the FCHR made a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his ninety (90) day Notice of Right to Sue letter from the EEOC which was received after April 20, 2021.

PARTIES

10.     Plaintiff is a Caucasian male who resides in Freeport, Florida. He was employed by Defendant from January 24, 2005, until his unlawful termination on May 18, 2020.

11.     Defendant, IBP installs insulation and other building products, such as garage doors, mirrors, shelves, and bath accessories, in the residential, industrial, and commercial new construction markets. As the country's second largest residential new construction insulation installer, Defendant employs more than 6,000 employees at its 175 locations nationwide and is an employer within the meaning of the ADA, ADAA, and FMLA.

GENERAL FACTS

12.     Plaintiff is a Caucasian male.

13.     Plaintiff was employed by TCI Contracting LLC., d/b/a 777 IBP of Pensacola/ACE ("TCI") in Pensacola, Florida as a Sales Representative from December 27, 2017, until July 21, 2020.

14.     During Plaintiff's time with Defendant, he had not been the subject of any disciplinary action and performed the duties and responsibilities of his position in a more than satisfactory manner.

15.     In May 2019, Plaintiff sought short term disability benefits through Defendant's third party administrator, Lincoln Financial Group ("Lincoln") for a serious health condition Plaintiff had been diagnosed with at the time.

16.     Lincoln granted Plaintiff's benefit request for the period of May 13, 2019, through June 10, 2019.

17.     Defendant knew Plaintiff was receiving such benefits and that he had been diagnosed with a serious health illness.

18.     Plaintiff's leave of absence ended on June 10 and he returned to work.

19.     In January of 2020, Plaintiff began receiving chemo therapy treatment for this serious health illness.

20.     In January of 2020, Jack McTiernan, Defendant's regional manager and Plaintiff's supervisor who oversees Defendant's Panhandle Branch, learned

4

that Plaintiff was undergoing chemotherapy treatment.

21.     The effects of the chemo therapy started to have drastic changes to Plaintiff's daily physical and mental abilities.

22.     Plaintiff's regional manager knew of the changes that were occurring with Plaintiff.

23.     Plaintiff was an "eligible employee" for purposes of the FMLA as he was employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

24.     Defendant and its Pensacola Regional Manager, Mr. Jack McTiernan, had sufficient knowledge and information of Plaintiff's health condition and chemo therapy treatment and that Plaintiff was a qualified individual entitled to FMLA leave.

25.     Plaintiff's notice to Defendant was sufficient to assert his rights under the FMLA, as he conveyed more than enough information to put Defendant on notice that an event described in the FMLA occurred.

26.      Defendant knew of his qualifying medical condition and failed to provide Plaintiff the necessary paperwork for FMLA leave.

27.      Since January 2020, when Defendant acquired sufficient information and knowledge that Plaintiff's chemo therapy treatment and diminished physical and mental capacities was for a FMLA-qualifying condition, Defendant should

have notified Plaintiff in writing of his eligibility to take FMLA leave within five business days.

28.    The FMLA required Defendant to give Plaintiff written notice detailing his specific expectations and obligations under the FMLA and further explaining any consequences of his failure to meet these obligations.

29.    Defendant never provided Plaintiff with any type of notice, written or otherwise, that he was entitled to FMLA benefits, thus interfering with and denying his substantive rights under the FMLA.

30.    Instead of immediately placing Plaintiff on FMLA leave, Defendant did nothing. Defendant knew that Plaintiff's cancer chemo therapy treatment and diminished physical and mental capacities was impacting his work performance, yet it continued to make him to work under conditions it knew or reasonable should have known were detrimental to his continued health and wellbeing.

31.    After starting his cancer chemo therapy, Plaintiff noticed a drastic change in attitude towards his employment by Defendant's management.

32.    Since May 2019 and more recently January 2020, Defendant had knowledge of Plaintiff's disability and cancer chemo therapy treatment and diminished physical and mental capacities when he informed Defendant of his said treatments and disability.

33.    Defendant maintains an Americans with Disabilities Act policy

("ADA Policy"), which provides that IBP will reasonably accommodate employees with disabilities.

34.     On June 17, 2020, Plaintiff sent an email to Isaac Gomez, an HR Partner for Defendant, in which Plaintiff wrote: "I am contacting the American cancer society about incidents I am having here in the Pensacola office. I have tried contacting the HR department before and have not received a response."

35.     Mr. Gomez spoke with Plaintiff after receiving the email. During the call, Plaintiff stated that he believed Mr. McTiernan was lying to clients whom Plaintiff brought in and not timely communicating with them regarding the completion of their orders in retaliation for Plaintiff taking leave for his cancer related chemotherapy treatment.

36.     After being informed of Plaintiff's disability related complaint about him, Mr. McTiernan, only then told corporate HR that he had been having ongoing performance issues with Plaintiff.

37.     Mr. McTiernan claimed that Mr. Bozeman did not travel to client sites, did not fill out paperwork correctly on job orders, and did not communicate with him.

38.     Mr. McTiernan further asserted that he had addressed these issues verbally with Plaintiff throughout Plaintiff's two and one half (2.5) years of employment.

39.     At no time prior to Plaintiff disability discrimination complaint did Mr. McTiernan never escalated the alleged performance issues to a written warning despite his claims that Plaintiff had failed to address them for two and one half (2.5) years.

40.     Plaintiff is a qualified individual with a disability:

>    (i)   he has a physical impairment that substantially limits one or more major life activities: Plaintiff suffers from mobility, bending, lifting concentration, thinking and fatigue;
>
>    (ii)    Plaintiff is under the treatment of a doctor for the care and treatment of his physical disabilities.
>
>    (iii)  he has a record of such impairment; and,
>
>    (iv)  he was regarded (perceived or otherwise) by Defendant as having such impairments.

41.     Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

42.     Plaintiff had the ability to perform the essential functions of his position and did so without incident until he was terminated by Defendant.

43.     Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation, but instead retaliated against him for making a disability discrimination complaint.

44.     Defendant maintains an Anti-Harassment Policy that prohibits

discrimination and harassment, including conduct and comments based on a person's disability, and further prohibits "retaliation against any employee for making a good-faith report of violations of this policy, for participating in good faith in an investigation undertaken pursuant to this policy.

45.     However, within thirty four (34) days of reporting disability discrimination by Mr. McTiernan, Defendant terminated Plaintiff's employment on July 21, 2020, for violating its Standards Policy based on prior conduct only raised by Mr. McTiernan after Plaintiff's complaint of discrimination.

46.     Defendant is now attempting to use prior undocumented or reported incidents from Plaintiff's two and one half (2.5) years of employment as justification for it's termination when it knowingly and intentionally retaliated against Plaintiff and failed to inform or offer him FMLA.

47.     Any possible assertion that Plaintiff was terminated for performance, or any other reason, or that there was a viable business justification for his dismissal, is entirely *pretextual* for Defendant's blatant retaliation and discrimination against him because of his disability and in violation of his substantive rights under the ADA, ADAA and FMLA.

### FIRST CAUSE OF ACTION
*(DISABILITY - AMERICANS WITH DISABILITIES ACT, (ADA), 42 U.S.C. §§ 12111-12117, 12203; THE AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 (ADAA))*

48.     Plaintiff repeats and re-alleges each and every allegation contained in

paragraph 1 through 47 of this complaint with the same force and effect as if set forth herein.

49.    This is an action to remedy discrimination on the basis of Plaintiff's disability in the terms, conditions, and privileges of his employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

50.    At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

51.    At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

52.    January of 2020, Plaintiff began receiving chemo therapy treatment for this serious health illness.

53.    In January of 2020, Jack McTiernan, Defendant's regional manager and Plaintiff's supervisor who oversees Defendant's Panhandle Branch, learned that Plaintiff was undergoing chemotherapy treatment.

54.    The effects of the chemo therapy started to have drastic changes to

Plaintiff's daily physical and mental abilities.

55.     Plaintiff's regional manager knew of the changes that were occurring with Plaintiff.

56.     Defendant and its Pensacola Regional Manager, Mr. Jack McTiernan, had sufficient knowledge and information of Plaintiff's health condition and chemo therapy treatment and that Plaintiff was a qualified individual entitled to FMLA leave.

57.     After starting his cancer chemo therapy, Plaintiff noticed a drastic change in attitude towards his employment by Defendant's management.

58.     Since May 2019 and more recently January 2020, Defendant had knowledge of Plaintiff's disability and cancer chemo therapy treatment and diminished physical and mental capacities when he informed Defendant of his said treatments and disability.

59.     Defendant maintains an Americans with Disabilities Act policy ("ADA Policy"), which provides that IBP will reasonably accommodate employees with disabilities.

60.     On June 17, 2020, Plaintiff sent an email to Isaac Gomez, an HR Partner for Defendant, in which Plaintiff wrote: "I am contacting the American cancer society about incidents I am having here in the Pensacola office. I have tried contacting the HR department before and have not received a response."

61.    Mr. Gomez spoke with Plaintiff after receiving the email. During the call, Plaintiff stated that he believed Mr. McTiernan was lying to clients whom Plaintiff brought in and not timely communicating with them regarding the completion of their orders in retaliation for Plaintiff taking leave for his cancer related chemotherapy treatment.

62.    After being informed of Plaintiff's disability related complaint about him, Mr. McTiernan, only then told corporate HR that he had been having ongoing performance issues with Plaintiff.

63.    Mr. McTiernan claimed that Mr. Bozeman did not travel to client sites, did not fill out paperwork correctly on job orders, and did not communicate with him.

64.    Mr. McTiernan further asserted that he had addressed these issues verbally with Plaintiff throughout Plaintiff's two and one half (2.5) years of employment.

65.    At no time prior to Plaintiff disability discrimination complaint did Mr. McTiernan never escalated the alleged performance issues to a written warning despite his claims that Plaintiff had failed to address them for two and one half (2.5) years.

66.    Plaintiff is a qualified individual with a disability:

(i)   he has a physical impairment that substantially limits one

or more major life activities: Plaintiff suffers from mobility, bending, lifting concentration, thinking and fatigue;

(ii)   Plaintiff is under the treatment of a doctor for the care and treatment of his physical disabilities.

(iii)  he has a record of such impairment; and,

(iv)  he was regarded (perceived or otherwise) by Defendant as having such impairments.

67.    Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

68.    Plaintiff had the ability to perform the essential functions of his position and did so without incident until he was terminated by Defendant.

69.    Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation, but instead retaliated against him for making a disability discrimination complaint.

70.    Defendant maintains an Anti-Harassment Policy that prohibits discrimination and harassment, including conduct and comments based on a person's disability, and further prohibits "retaliation against any employee for making a good-faith report of violations of this policy, for participating in good faith in an investigation undertaken pursuant to this policy.

71.    However, within thirty four (34) days of reporting disability discrimination by Mr. McTiernan, Defendant terminated Plaintiff's employment on

July 21, 2020, for violating its Standards Policy based on prior conduct only raised by Mr. McTiernan after Plaintiff's complaint of discrimination.

72.     Defendant is now attempting to use prior undocumented or reported incidents from Plaintiff's two and one half (2.5) years of employment as justification for it's termination when it knowingly and intentionally retaliated against Plaintiff for reporting disability discrimination.

73.         Any possible assertion that there was a viable business justification for the Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

74.     The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

75.     As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the

wrongful, unlawful and retaliatory demotion that lead to his discharge from Defendant's employment.

76.    As a result of being wrongfully and unlawfully retaliatory actions that lead to his discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

77.    Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

78.    Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

<u>SECOND CAUSE OF ACTION</u>
*(DISABILITY RETALIATION - AMERICANS WITH DISABILITIES ACT, (ADA), 42 U.S.C. §§ 12111-12117, 12203; THE AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 (ADAA))*

79.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 47 of this complaint with the same force and effect as if set forth herein.

80.    This is an action to remedy discrimination on the basis of Plaintiff's disability in the terms, conditions, and privileges of his employment with

Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

81.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

82.     At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

83.     January of 2020, Plaintiff began receiving chemo therapy treatment for this serious health illness.

84.     In January of 2020, Jack McTiernan, Defendant's regional manager and Plaintiff's supervisor who oversees Defendant's Panhandle Branch, learned that Plaintiff was undergoing chemotherapy treatment.

85.     The effects of the chemo therapy started to have drastic changes to Plaintiff's daily physical and mental abilities.

86.     Plaintiff's regional manager knew of the changes that were occurring with Plaintiff.

87.     Defendant and its Pensacola Regional Manager, Mr. Jack McTiernan, had sufficient knowledge and information of Plaintiff's health condition and chemo therapy treatment and that Plaintiff was a qualified individual entitled to FMLA leave.

88.     After starting his cancer chemo therapy, Plaintiff noticed a drastic change in attitude towards his employment by Defendant's management.

89.     Since May 2019 and more recently January 2020, Defendant had knowledge of Plaintiff's disability and cancer chemo therapy treatment and diminished physical and mental capacities when he informed Defendant of his said treatments and disability.

90.     Defendant maintains an Americans with Disabilities Act policy ("ADA Policy"), which provides that IBP will reasonably accommodate employees with disabilities.

91.     On June 17, 2020, Plaintiff sent an email to Isaac Gomez, an HR Partner for Defendant, in which Plaintiff wrote: "I am contacting the American cancer society about incidents I am having here in the Pensacola office. I have tried contacting the HR department before and have not received a response."

92.     Mr. Gomez spoke with Plaintiff after receiving the email. During the call, Plaintiff stated that he believed Mr. McTiernan was lying to clients whom Plaintiff brought in and not timely communicating with them regarding the

completion of their orders in retaliation for Plaintiff taking leave for his cancer related chemotherapy treatment.

93.    After being informed of Plaintiff's disability related complaint about him, Mr. McTiernan, only then told corporate HR that he had been having ongoing performance issues with Plaintiff.

94.    Mr. McTiernan claimed that Mr. Bozeman did not travel to client sites, did not fill out paperwork correctly on job orders, and did not communicate with him.

95.    Mr. McTiernan further asserted that he had addressed these issues verbally with Plaintiff throughout Plaintiff's two and one half (2.5) years of employment.

96.    At no time prior to Plaintiff disability discrimination complaint did Mr. McTiernan never escalated the alleged performance issues to a written warning despite his claims that Plaintiff had failed to address them for two and one half (2.5) years.

97.    Plaintiff is a qualified individual with a disability:

> (i)   he has a physical impairment that substantially limits one or more major life activities: Plaintiff suffers from mobility, bending, lifting concentration, thinking and fatigue;
>
> (ii)   Plaintiff is under the treatment of a doctor for the care

and treatment of his physical disabilities.

(iii)  he has a record of such impairment; and,

(iv)  he was regarded (perceived or otherwise) by Defendant as having such impairments.

98.   Plaintiff's disabilities substantially affected the major life activities of concentration, self-care, sleep and decreased mental acuity.

99.   Plaintiff had the ability to perform the essential functions of his position and did so without incident until he was terminated by Defendant.

100.  Defendant knew of Plaintiff's medical condition and refused to discuss an accommodation, but instead retaliated against him for making a disability discrimination complaint.

101.  Defendant maintains an Anti-Harassment Policy that prohibits discrimination and harassment, including conduct and comments based on a person's disability, and further prohibits "retaliation against any employee for making a good-faith report of violations of this policy, for participating in good faith in an investigation undertaken pursuant to this policy.

102.  However, within thirty four (34) days of reporting disability discrimination by Mr. McTiernan, Defendant terminated Plaintiff's employment on July 21, 2020, for violating its Standards Policy based on prior conduct only raised by Mr. McTiernan after Plaintiff's complaint of discrimination.

103.   Defendant is now attempting to use prior undocumented or reported

incidents from Plaintiff's two and one half (2.5) years of employment as justification for it's termination when it knowingly and intentionally retaliated against Plaintiff for reporting disability discrimination.

104. Any possible assertion that there was a viable business justification for the Plaintiff's termination is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

105. The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

106. As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to his discharge from Defendant's employment.

107. As a result of being wrongfully and unlawfully retaliatory actions that lead to his discharge from Defendant's employment, Plaintiff has been

experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

108.    Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

109.    Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

### THIRD CAUSE OF ACTION
*(FMLA INTERFERENCE)*

110.   Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 47 of this complaint with the same force and effect as if set forth herein.

111.   Plaintiff was employed by TCI Contracting LLC., d/b/a 777 IBP of Pensacola/ACE ("TCI") in Pensacola, Florida as a Sales Representative from December 27, 2017, until July 21, 2020.

112.   During Plaintiff's time with Defendant, he had not been the subject of any disciplinary action and performed the duties and responsibilities of his position in a more than satisfactory manner.

113.   In May 2019, Plaintiff sought short term disability benefits through

21

Defendant's third party administrator, Lincoln Financial Group ("Lincoln") for a serious health condition Plaintiff had been diagnosed with at the time.

114.   Lincoln granted Plaintiff's benefit request for the period of May 13, 2019, through June 10, 2019.

115.   Defendant knew Plaintiff was receiving such benefits and that he had been diagnosed with a serious health illness.

116.   Plaintiff's leave of absence ended on June 10 and he returned to work.

117.   In January of 2020, Plaintiff began receiving chemo therapy treatment for this serious health illness.

118.   In January of 2020, Jack McTiernan, Defendant's regional manager and Plaintiff's supervisor who oversees Defendant's Panhandle Branch, learned that Plaintiff was undergoing chemotherapy treatment.

119.   The effects of the chemo therapy started to have drastic changes to Plaintiff's daily physical and mental abilities.

120.   Plaintiff's regional manager knew of the changes that were occurring with Plaintiff.

121.   Plaintiff was an "eligible employee" for purposes of the FMLA as he was employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

122.   Defendant and its Pensacola Regional Manager, Mr. Jack McTiernan,

had sufficient knowledge and information of Plaintiff's health condition and chemo therapy treatment and that Plaintiff was a qualified individual entitled to FMLA leave.

123.   Plaintiff's notice to Defendant was sufficient to assert his rights under the FMLA, as he conveyed more than enough information to put Defendant on notice that an event described in the FMLA occurred.

124.   Defendant knew of his qualifying medical condition and failed to provide Plaintiff the necessary paperwork for FMLA leave.

125.   Since January 2020, when Defendant acquired sufficient information and knowledge that Plaintiff's chemo therapy treatment and diminished physical and mental capacities was for a FMLA-qualifying condition, Defendant should have notified Plaintiff in writing of his eligibility to take FMLA leave within five business days.

126.   The FMLA required Defendant to give Plaintiff written notice detailing his specific expectations and obligations under the FMLA and further explaining any consequences of his failure to meet these obligations.

127.   Defendant never provided Plaintiff with any type of notice, written or otherwise, that he was entitled to FMLA benefits, thus interfering with and denying his substantive rights under the FMLA.

128.   Instead of immediately placing Plaintiff on FMLA leave, Defendant

did nothing. Defendant knew that Plaintiff's cancer chemo therapy treatment and diminished physical and mental capacities was impacting his work performance, yet it continued to make him to work under conditions it knew or reasonable should have known were detrimental to his continued health and wellbeing.

129.   Defendant knew of Plaintiff's medical condition and refused to discuss any type of accommodation, FMLA leave or acknowledge that his chronic PTSD was related to his working environment.

130.   Defendant had more than sufficient knowledge that Plaintiff's chronic PTSD was an FMLA-qualifying condition.

131.   Defendant knew or should have known that Plaintiff's medical condition was or could have been qualified under the FMLA.

132.   Defendant unlawfully interfered with Plaintiff's rights under the Family and Medical Leave Act when it acquired sufficient knowledge that Plaintiff's leave was for an FMLA-qualifying reason.

133.   Defendant knew or should have known of Plaintiff's eligibility to take FMLA and refused, international or otherwise, to notify Plaintiff of his FMLA leave rights.

134.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

135.   Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

136.   Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to the FMLA.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

      a)     Declaring the acts and practices complained of herein are violation of the, FMLA, ADA, ADAA;

      b)     Enjoining and permanently restraining those violations of the FMLA, ADA, ADAA;

      c)     Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

      d)     Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of him and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, including but not limited to, wages, pension, and

other lost benefits.

e)      Awarding Plaintiff liquidated damages;

f)      Awarding Plaintiff compensatory damages;

g)      Awarding Plaintiff the costs of this action together with a reasonable attorney's fees;

h)      Granting such other and further relief as the Court deems just and proper in the premises.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: July 12, 2021.          By: */s/ Clayton M. Connors*
                                CLAYTON M. CONNORS
                                Florida Bar No.: 0095553
                                Email: cmc@westconlaw.com
                                **THE LAW OFFICES OF**
                                **CLAYTON M. CONNORS, LLC.**
                                4400 Bayou Blvd., Suite 32A
                                Pensacola, Florida 32503
                                Tel:  (850) 473-0401
                                Fax: (850) 473-1388
                                Attorney for Plaintiff